## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| CHRISTOPHER P. PRESSEY<br>2 Iron Gate Court<br>Catonsville, Maryland 21228<br><br>      Plaintiff,<br><br>    v.<br><br>MIKE POMPEO, Secretary,<br>U.S. Department of State<br><br>Serve:  Alicia Frechette,<br>U.S. Department of State<br>Executive Director<br>Office of the Legal Adviser, SA-17<br>600 19th Street, N.W., Suite 5.600<br>Washington, DC 20522<br><br>Serve:  Matthew G. Whitaker,<br>Acting Attorney General of the United States<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530<br><br>Serve:  Jessie K. Liu,<br>U.S. Attorney for the District of Columbia<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, DC 20530<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: _____<br>)<br>)<br>) **Jury Demanded**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff Christopher P. Pressey, by and through undersigned counsel, and files suit against the named Defendant, and for cause of action states as follows:

## INTRODUCTION

1.   Plaintiff Christopher P. Pressey ("Plaintiff" or "Mr. Pressey") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for relief from discrimination and a hostile work environment based on his race (African American).

2.   Defendant Mike Pompeo ("Defendant" or "Secretary Pompeo") discriminated against Plaintiff on the basis of his race (African American), and subjected him to a hostile work environment during the course of his employment with the Department of State ("the Agency").

## JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3).  Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and a question of federal law is presented.  28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

4.   Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  Secretary Pompeo is an officer of the Department of State and the Agency, which is headquartered in the District of Columbia.  Secretary Pompeo performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia.  *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

## PARTIES

5. Plaintiff is currently domiciled at 2 Iron Gate Court, Catonsville, Maryland 21228.  At all relevant times, Plaintiff was an employee of the Department of State. Plaintiff is a resident of Baltimore County, Maryland and a United States citizen.

6. Secretary Pompeo is being sued in his official capacity as the Secretary for the United States Department of State.

7. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all of his administrative remedies.

9. On February 1, 2018, Plaintiff timely contacted an EEO counselor and filed an informal complaint of discrimination based on race and a hostile work environment.

10. On March 7, 2018, after the Agency issued a Notice of Right to File, dated February 28, 2018, Plaintiff timely filed a formal EEO complaint complaining of the discriminatory and harassing actions at issue herein.

11. After a Report of Investigation / Investigative File was completed on September 24, 2018, Plaintiff timely requested a Final Agency Decision on the merits of his Complaint.

12. On November 14, 2018, the Agency issued a Final Agency Decision.

13. Plaintiff now timely files this action pursuant to the 29 C.F.R. § 1614.407(a).

## FACTS

14. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

15. Plaintiff has been employed by the Agency since December 1999, and since January 2010, he has been a Visa Unit Chief, GS-12, with the Department of State in Washington, D.C.

16. During the relevant time period, Plaintiff's direct supervisors were Eugene Arnold, Consular Chief U.S. Embassy Kampala, Uganda (Caucasian)(Male) from mid-August 2015 to mid-August 2017; Christine Harold, Senior Advisor/Consultant, Washington, D.C. (Caucasian)(Female) from Summer 2014 to June 2016; Kerstin Roper, Assistant Director Special Issuance Agency (SIA), Washington, D.C. (African American)(Female) from July 2015 to August 2015 and mid-August 2017 to present; and Jennifer DeWitt Walsh, Director SIA, Washington, D.C. (Caucasian)(Female) from June 2016 to present.

17. On February 3, 2016, Eugene Arnold came to Plaintiff's office to discuss a meeting he had with Christine Harold. Eugene Arnold came into Plaintiff's office yelling, telling him not to communicate with the Congressional Travel Office anymore. Plaintiff asked Eugene Arnold to leave if he was going to yell and Eugene Arnold refused to leave or sit. Instead, he stood over me in an intimidating posture and repeated his remarks until Plaintiff responded that he was not going to be spoken to in that manner. Eugene Arnold then proceeded to sit down and ordered Plaintiff not to communicate with the office.

18. On February 17, 2016, Plaintiff met with Christine Harold regarding management's directions on moving forward with possibly upgrading my position from

4

GS-12 to GS-13, which I had previously discussed with the Regional Director. In this meeting, Christine Harold told Plaintiff that he was not as accomplished as he thought (in relation to a possible promotion at the time).

19. On March 31, 2016, Chad White, Field Technician (Contractor) sent an email regarding the movement of equipment for Plaintiff's staff from the third floor to the fourth floor. Prior to this email being sent, Plaintiff spoke with Linda Washington, Support Service Specialist, about the move but while he was out of the office on March 31, 2016, Chad White sent an email about the move to several employees, excluding Plaintiff. When Plaintiff returned to the office on April 1, 2016, he responded to Chad White's email stating that all the proper people were not involved in the conversations. Eugene Arnold then sent Plaintiff a subsequent email stating that he was out of line, that Chad White did not have to talk to him because he (Eugene Arnold) was the boss and he did not have to discuss anything with Plaintiff before the email was sent out. On April 5, 2016, I sent Kerstin Roper an email stating that she believed that Eugene Arnold's chastising was personal.

20. On January 1, 2017, Eugene Arnold informed Plaintiff that he would not renew his regular day off schedule and stated that he needed to be in the office every day. Plaintiff's schedule at that time allowed him to work nine (9) hour days with one day off every other week. Plaintiff continuously asked Kerstin Roper why his schedule was being changed, noting that no other GS-12 Supervisor had their schedule adjusted to require that they be in the office every day. Additionally, another employee, Laura Pascarella, Customer Service Manager (Caucasian)(Female), who had a staff of about 6

employees reporting to her, moved 180 miles away and was allowed 100% telework. Plaintiff never received a valid reason for his schedule change.

21. On April 11, 2017, Kerstin Roper questioned Plaintiff about not being helpful to DoD in connection with an incident that was discussed via an email exchange between Plaintiff and Robert Dickerson, Visa Specialist, and informed Plaintiff that he could be written up for not being helpful.  However, Kerstin Roper was not copied on this email exchange and when Plaintiff asked Kerstin Roper how she obtained the email,  Kerstin Roper did not respond.

22. On June 8, 2017, Eugene Arnold came to Plaintiff's office for his mid-year review and suggested that Plaintiff try for a temporary assignment for Foreign Service, remarking that Plaintiff should visit Africa one day because "you never know, you might be able to look up your ancestor or find relatives."  Plaintiff was shocked by the remark and unsure of how to respond.

23. On July 27, 2017, Jennifer DeWitt Walsh embarrassed Plaintiff by openly berating him within earshot of his staff and contractors because a Foreign Service Officer was having trouble accessing an online application form.

24. On August 7, 2017, Jennifer DeWitt Walsh sent a condescending email to Plaintiff, copying his entire staff and the Foreign Service Officer who previously could not access online application forms, stating that she looked forward to seeing a plan for resolution by COB that day.

25. On November 13, 2017, Plaintiff, who served in the Navy, was excluded from an email sent by Jennifer DeWitt Walsh regarding the Special Issuance Agency Veterans tribute for SIA service members.  Plaintiff was not listed as a veteran in the email even

though he has specifically told Jennifer DeWitt Walsh that he served in the Navy.  On November 14, 2017, Plaintiff emailed Yolanda Deveraux, Passport Supervisor, to inquire as to why he was excluded from the email but never received a reason for his exclusion.

26. On November 30, 2017, Jennifer DeWitt Walsh accused Plaintiff of being Absent Without Leave (AWOL) after he was given an early departure of fifty-nine (59) minutes from his regular departure time of 4:00 p.m. by the front office.  Jennifer DeWitt Walsh based this accusation on the fact that Kerstin Roper did not approve Plaintiff's leave request for that day.  Plaintiff explained to Jennifer DeWitt Walsh that although Kerstin Roper did not approve his leave request, he departed based on the front office's approval of 59 minutes early departure for the entire department and that his scheduled departure time was 4pm.  Jennifer DeWitt Walsh responded to Plaintiff's explanation by stating that an early departure was contingent on having a skeleton crew of managers in place and was not a blanket dismissal.

27. On December 5, 2017, Plaintiff's entire sixteen (16) member team was excluded from an email sent by Jennifer DeWitt Walsh regarding a St. Nicholas Day event.  In the email, Plaintiff was incorrectly listed as a member of another team (Team #3) with Kerstin Roper as Facilitator even though he was a Team Lead.

28. On December 6, 2017, Jennifer DeWitt Walsh sent an email to the entire staff with the subject "Nancy Drew and the Case of the Missing Keys" that included a picture showing a Caucasian female looking down with a magnifying glass to a degrading and stereotyping  image of an African-American female with large earrings and a low cut top.

29. On December 8, 2017, Kerstin Roper accused Plaintiff and his staff of commiserating with other offices and told him that it would not be tolerated because someone wrote a negative comment about their new website.

30. On December 12, 2017, Plaintiff spoke with Kerstin Roper about taking administrative leave to see a clinical therapist.  Kerstin Roper told Plaintiff that she needed a specific document to verify his appointment, and made it extremely difficult for Plaintiff to use administrative leave, causing him use his limited annual leave instead.

31. On January 18, 2018, Plaintiff was excluded from an email exchange between Jennifer DeWitt Walsh and Danny White, Entitlement Manager, regarding possible changes to the SIA Visa website, which he manages.  Plaintiff was not included in the email exchange even though the information exchanged would possibly impact his operations.  Plaintiff informed Don Mattingley, Assistant Director, of the incident and the fact that he is often excluded on such emails.

32. On January 31, 2018, Plaintiff received his 2017 performance appraisal for the rating period January 1, 2017 to December 31, 2017. Upon review of his performance appraisal, in which he was rated "Fully Successful", Plaintiff informed Kerstin Roper that the narratives lacked substance and omitted information that would boost his rating from "Fully Successful" to "Exceeds Expectations" on three of his rating assessments.

33. Despite Plaintiff's explanation to Kerstin Roper that he had additional information that may move his rating to above "Fully Successful", she remarked that this "Fully Successful" rating was "generous" according to Jennifer DeWitt Walsh who was the final approver.  Plaintiff's rating was not changed to the deserved "Exceeds Expectations" and he was not given an opportunity to dispute the performance assessment. Plaintiff believes

that the rating was based on Jennifer DeWitt Walsh's discriminatory personal judgment rather than his actual performance and that his race was the actual reason for her decision not to consider the additional evidence he submitted to boost his rating and to deny him an opportunity to dispute the performance assessment.

34. On April 11, 2018, Rear Admiral Yvette M. Davids, Senior Military Advisor, Bureau of Political-Military Affairs, asked Plaintiff via email for suggestions on how they could better work together to assist Seabees and their families with the transition to overseas posts.  Plaintiff informed Kerstin Roper of the meeting, and later that day, Jennifer DeWitt Walsh.  Jennifer DeWitt Walsh told Plaintiff that he should push the meeting back because she would prefer to have more background information.  Danny White, Entitlement Manager, and Jennifer DeWitt Walsh ultimately met with the Admiral without Plaintiff or Kerstin Roper, who are both African-American.

35. Plaintiff believes that his race and color were factors in the aforementioned incidents.

36. Upon information and belief, similarly situated employees of a different protected class are not subjected to the same foregoing harassment/hostile work environment and unlawful treatment by management officials.

37. For example, after Kerstin Roper refused to allow Plaintiff to provide additional information that could improve his rating on his 2017 performance apprasail, Plaintiff learned that Sarah Dirck (Caucasin) (Female) (GS-13), received an improved rating after providing additional bullet points.  Additionally, when Gene Arnold became Plaintiff's supervisor, Plaintiff was required to complete quarterly and mid year performance reviews even though his peers, Sarah Dirck, Danny White (Caucasian) (Male) (GS-13),

and Laura Pascarella (Caucasin) (Female) (GS-13) were never required to complete quarterly performance reviews.   Even though Plaintiff is at level GS-12, he is often categorized and treated as a GS-13 because of his staff size.

## CAUSES OF ACTION

### COUNT ONE
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq.*
### (Employment Discrimination on the Basis of Race)

38. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

39. Plaintiff is an African American male and, as such, is a member of a protected class.

40. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and harassing treatment in comparison to non-African American employees that Defendant employed.

41. Defendant has subjected Plaintiff to adverse employment actions, including the adverse actions alleged herein, and otherwise deprived Plaintiff of his rights as enjoyed by his non-African American coworkers.

42. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

43. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of staffing levels, are not legitimate and would be pretext for its discriminatory conduct.

44. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is an African-American male.

45. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African-American).

46. Defendant has limited Plaintiff in a way that deprives him of employment opportunities, workplace benefits and otherwise adversely affects his status as an employee because of his race (African-American).

47. Other employees who were similarly situated, but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

48. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African-American).

49. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

50. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Defendant's treatment and actions were ongoing.

51. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a.  Award compensatory damages as permitted by statute;

    b.  Award lost wages (back pay / front pay) with interest;

    c.  Award reasonable attorney fees, costs, and expenses incurred for this action;

    d.  Order Defendant to provide Plaintiff with Management Training Courses;

    e.  Order Defendant to institute a policy and procedure to be implemented against discrimination;

    f.  Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    g.  Supervisory training for the supervisors at issue herein;

    h.  Award equitable, declaratory, and injunctive relief; and

    i.  Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq.*
### (Hostile Work Environment)

52. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

53. As a result of Plaintiff's protected status, Plaintiff's supervisors routinely engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

54. Plaintiff was regularly and continually subjected to harassing conduct that included unfair scrutiny of his work performance, being disrespected by his supervisors,

subjected to false accusations, stigmatized, which created a hostile and abusive work environment.

55. Plaintiff believes that he was subjected to a hostile work environment based on his race (African American).

56. Defendant's unlawful conduct was unwelcome.

57. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

58. Plaintiff was subjected to harassment because of his protected status, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

59. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and, despite being repeatedly detailed, was forced to continue reporting to his harasser.

60. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

61. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Defendant's treatment and actions were ongoing.

63. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a.   Award compensatory damages as permitted by statute;

    b.   Award lost wages (back pay / front pay) with interest;

    c.   Award reasonable attorney fees, costs, and expenses incurred for this action;

    d.   Order Defendant to provide Plaintiff with Management Training Courses;

    e.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

    f.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    g.   Supervisory training for the supervisors at issue herein;

    h.   Award equitable, declaratory, and injunctive relief; and

    i.   Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

64. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

65. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules

and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

b.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.   Supervisory training for the supervisors at issue herein; and

d.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

66. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*A Marques Pitre, Esq.*

By:   _____

A. MARQUES PITRE, Partner
(D.C. Bar No. 503119)
Pitre & Associates, LLC
Ronald Reagan Building and
International Trade Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*